My name is Charles W. Coe, and I'm an attorney representing William Mendenhall. Mr. Mendenhall tried to get in earlier, but he had the wrong type of ID, so he couldn't get in, but we understand that. So if he busts through the door, everybody understands that also. This case is a case involving an incident at Anchorage, at Alaska Native Medical Center that happened several years ago. The incident involves an incident in which Mr. Mendenhall was there visiting somebody, and he was injured. In the process, they asked him to leave. He didn't leave right away. The guard, or security guard, took him, and he says, according to his deposition, is that he lost his balance and he ended up face down on the floor. He sat him down there, put his hands behind his back, and he then proceeded to eventually let him up and leave. And what we brought is, we brought this as a negligence action under the Federal Tort Claims Act. The reason we did that was the court was pretty clear, there was an underlying case against the guard itself, that the guard had been at the time. We have a problem up here with A&MC, because we don't always know if people are contractors or employees. And it's a real problem, because you sue A&MC, and you find out they are contractors. There you go, Mr. Mendenhall is here. And you find out they're contractors, it's almost negligence, because you didn't sue the contractors. So we sued the security guard. That case was dismissed when, as he was a member at that time, he was a person who was considered a federal employee, and he was in the course and scope of his work, even though there was an allegation of an assault at that time. Mr. Ireton, the security guard, denied, essentially, he didn't admit that he intentionally injured Mr. Mendenhall. It sounded like there was a dispute, whether he put him on the floor or not. This was handled under 12b-6. 12b-6, it was not handled under a Rule 56 procedure. It was handled under 12b-6. We never got an answer. Discovery was limited, because the only time we got a deposition was, we got a deposition from Mr. Ireton, and it had to do with jurisdiction, about who he was employed by, where were you working, were you in the course and scope of duty. So his deposition was limited. We couldn't depose anybody else. So it was handled under 12b-6. 12b-6, it's unfortunate, but under 12b-6, there's a dispute sometimes. How do you handle it? Do you elevate it to a motion for summary judgment under 56, or do you take it as it's planned? You look at the face of the pleadings, and if it's covered in the pleadings, you should be able to get by. This case is somewhat unique, because we had other information that we could submit to the court, including a part of Mr. Ireton's deposition. The court elected to take the position is that, in this particular case, that it treated the negligence counts, which that is under Excerpt 42, is our complaint. And under 42, the court didn't follow that particular section of the complaint, which talks about negligence. There's a section in there that talks about discretionary function. When I say discretionary function, it talks about the government, training, supervision, monitoring, as a form of negligence. But it also has numerous counts of what is negligence. And it's not all related to what the court characterized, the gravamen, of the case, of it being an assault. The court called it the gravamen of the case. I know what gravamen means, but I haven't seen it in the context of other case law. And the court cited Mountain Homes, Inc. versus the United States, and said, oh, by the way, we can look beyond what the complaint says, and what you're really saying here, Mr. Coe, is this is an assault case. No, I couched it specifically. You said negligence, but earlier you pled assault. In a prior case. Yes, for the same action. Why was the district court wrong in your estimation and saying that really your negligence claim was truly an assault claim? When you look at Mountain Homes, Inc., very distinctly that the court, that's a misrepresentation case, of course. But when you look in it, the court says, look at a case called Block versus Neal, compare it to Newstead versus United States. When you compare the two, and what you're looking at is if there's an additional count. If you can put in an additional count other than the, in that case, negligent misrepresentation, Block didn't have that. It had two counts, and one of them was not that. Then you're good to go. So that's why we. What do you think was negligent here as opposed to intentional? What's that? What do you think, what do you contend here was the negligent act as opposed to an intentional act? Because clearly there was an element of intent to restrain or put your client down, correct? Well, there was never an admission of an intent to do that. What the security describes it as, as someone being, someone being, losing balance. He described it as a put my hand on him and the offset balance. And he said I was able to take him down. What's that?  He did say that, but then he calls it an offset move. So we never got something from the security guard saying it was, that was the, you know, I intended to, you know, it was an intentional act on his part. What about the state court proceedings and the discussion there that it was an intentional assault? That's why what happened is the court was real clear when they said when we did file it and it was brought into state federal court, had he not been a federal employee, it would have been a different outcome. We'd be back into. No, but that, whether he's an employee or not, federal state or a contractor, it doesn't matter vis-a-vis what he did. And so was that error in some way for the district court to look at the state court proceeding? First of all, the state court proceeding actually was the complaint that got removed through the federal court. So it was all federal court proceeding. But wasn't it, wasn't the, didn't you use the word intentional there? Wasn't the word intentional used? In this, in the original action against, solely against Mr. Right. And so, and it seems to me that as you candidly acknowledged, you tried to plead around that later to basically, and you said, we, you went to extremes not to allege assault, but isn't that conduct the same? And doesn't it, as the, as the statute talks about arise from assault battery or false imprisonment? Not really. And why not? When you look at, when we file the correct complaint under the federal tort claims act, it's not a matter of artful pleading. It's a matter of saying, oh, by the way, here's why they're negligent. One is the, the negligence and failing to monitor, train and regulate the, you'll see that under on page 42, count 10.  And that's what I'm talking about. The primary claim, which is that this arises out of, and then the quote from the statute, so battery, false imprisonment, et cetera. That's what, but if you look at paragraph 11 of our complaint, pay at excerpt 42, you can see that what I pled was, first of all, you have the negligence that we'll discuss with the discretionary function argument. But then you also have paragraph 11, which we said employees also the duty and handling of care, duty of care, which is negligence and causing him to fall, which there was a dispute, whether he pushed him intentionally, how he did that. There was a dispute on that. So that would be negligence. And then what did he do after he either was intentionally pushed down or he fell over? Then what did the employee do? What did the employee do? Then he would be negligent. He would be, no. Didn't he sit on him basically? Yeah, but that's a different aspect of why, I mean, what, what, what is that? What does that, isn't that pretty intentional to sit upon or to restrain the individual? That could be considered intentional, but how he gets on the ground and injured may be looked at separately and non-intentional. So you are saying that if you just split this, like getting to the ground and then being on the ground, that the being on the ground wasn't, once you're there and he sat on him, that was intentional. That could be intentional. Yes. So you're now, I don't want to say you're splitting hairs, but you're splitting the claim to say, but how he got to the ground in your view was negligent. That's what we're saying under 12B6. Remember, I keep saying 12B6 because it's kind of a show what you got basis to a certain degree. It's not like rule 56. You're down to about 430. Do you want to get to the discretionary function? Okay. On the discretionary function, what we maintain with the discretionary function is that there is, in this particular case, there was a set of rules that ANMC had, and you'll see it at the end of the excerpts. And in fact, what you'll see, it's, I think it's an excerpt 164, and there's an earlier two excerpts that talk about this particular set of rules is that the government, in this case, the ANMC already had a, they already went beyond the discretionary function stage. They had, they promulgated a set of rules. Now, let me, my position on that is within this set of rules, for example, 3.24, when you look at that and it says security guards, security officers shall use the least amount of force necessary, they use the term shall several places. And to say it's discretionary, you don't use the term shall. You may use some other portion as we recommend. We could supervise this way. We can look at it. They promulgate a set of rules that require that they require that they, that the people abide by the set of rules. The second set, which is one of the things that has to do with training, is 3.27.1 on the same excerpt. Security officers shall receive specialized training in deescalating hostile situations and managing aggressive individuals. So that's another one in there. Once again, the shall takes it out of what we say is the, this system of discretionary function. And that's why it has a cause of action that should state and should remain. Thank you, counsel. Okay. Thank you. And I, I would reserve if there's, I have two minutes, two or three minutes left. I'll reserve that. And I would like to at least be able to address the one issue on constitutional, the constitutional argument also. May, excuse me, may it please the court, Dustin Glazier for the United States. Alexander Hamilton wrote, it is inherent in the nature of sovereignty, not to be, not to be amenable to the suit of an individual without its consent. As this court knows, the United States enjoys sovereign immunity from suit in all but a few causes of action. This case is on focus on one such waiver, the Federal Tort Claims Act, which is the exclusive remedy for torts committed by employees of the United States while acting within the scope of their employment. However, the FDCA, as this court is aware, is not an all encompassing. It does not waive sovereign immunity for certain categories of tortious claims, including any claim arising out of assault, battery, false imprisonment, false arrest, or other intentional torts. Also, any claim based on this exercise or the failure to exercise or perform a discretionary function, whether or not the discretion involved be abused. The lower court correctly held that the United States had not waived its sovereign immunity for Mendenhall's claims for three reasons. First, Mendenhall's complaint regarding the conduct of the security guards were precluded by intentional tort exemptions to the FDCA. Second, Mendenhall's complaint... Let me ask about that if I could. Yeah, absolutely. Let me change the facts a little bit. Okay. Suppose we'll have the same institution and we'll change the name of the security guard, so it's now Jones, and suppose Jones just sees somebody he doesn't like and whoops him upside the head, cold cocks him, right there. Pretty clearly would qualify as an intentional tort. Some question as to whether it's within the scope of employment. What remedy would the plaintiff have in that case? I mean, I take it you don't say that the Federal Tort Claims Act is meant to immunize somebody who's deemed a federal employee, so what's the right remedy? I think in that case, as you pointed out, the first is to analyze whether or not it's within the scope of the employment. And so if he just didn't like someone and bopped them over the head, I think that is clearly outside the scope of the employment. But if, let's say, it's somebody who was on the margin and they were kind of acting up and maybe posing a risk and he didn't like them, and he just went up and bopped them in maybe a malicious way, I think you would also look to what the policies and procedures were in place and whether or not he was adhering to those policies and procedures. That's an important part of the analysis under discretionary function is whether or not those policies and procedures have been created and whether or not they're adhered to, because once those are created, it isn't a discretionary function anymore. They are held to those policies, statutes, or regulations that require that action. So to save this, you're basically telling us to focus on the second aspect of plaintiff's argument to see if the policies are really adhered to, because otherwise it seems there's a concern about carving out a zone of immunity for somebody who's really not supposed to be immune and depriving an injured plaintiff of a remedy that's not supposed to be taken away just because the offender happened to have a federal employee status. And I would acknowledge, Your Honor, that this does seem a very narrow conception where they're outside the law enforcement provision, but they are still providing the sorts of services and the scope of their employment does involve something that can be construed as such in this case as assault or battery or false imprisonment. Unfortunately, as this court probably has seen many times, there are these narrow parts where Congress maybe didn't fully contemplate what was intended there, and we were forced to look exactly at how the statute was written and provided, and looking at the FTCA, the waiver of sovereign immunity only applies in those cases where there, you know, it does not apply when there are cases of intentional tort such as this. I would point, though, that the FTCA, before the FTCA was enacted, there was no remedy for anyone who had a negligent action or any other kind of tort committed by a federal employee. It wasn't until a plane crashed into the Empire State Building that there was enough understanding that this was kind of a concern for negligent actions by employees. And so as this has been whittled down by the FTCA, I would say there is still a small portion here that may be a little unclear. Well, if it's unclear on a 12b-6, doesn't that counsel for moving forward to some fact-finding? I guess I would say it is clear based on the statute. It's unclear as to the hypothetical of when someone is acting maybe outside their scope but still committing an action that would be an assault or battery. Well, here we have somebody acting within their scope, but Mr. Coe has posited that you really could divide it in half. The act of whether the individual was intentionally pushed down or whether he was teetering and tottering and kind of fell down with a bit of a hand on him. So that's one. And then the second would be sitting on him, which Mr. Coe seemed to acknowledge that that would be an intentional act. So do you think it would be appropriate to split it here in terms of the conduct and whether a claim survives at 12b-6? I have two points to that, Your Honor. The first is that the court did not specify 12b-6 or 12b-1. It said that it analyzed them both under both the 12b-1 and 12b-6 and followed through that because the 12b-1 provided the factual and facial attacks to jurisdiction that seemed very important in the court's ultimate decision. And it did not preclude the fact that you could evaluate this under 12b-6 as well. Contrary to how it's been portrayed, there wasn't really a clear delineation of one or the other. It was analyzed kind of like a whole. Okay, well, let's take that as a given, but that doesn't answer the question. Right. My second point is more direct. I do think that you could analyze it under assault, battery, or false imprisonment. And under plaintiff's own definitions of each of those, citing to the Alaska Pattern Civil Jury Instructions, he specifically states assault requires intent to touch in a harmful or offensive way, battery requires both an intent to touch and a follow through of that intent, and false imprisonment requires both confinement and intent to confine. And under appellant's own definitions that he's provided of what those are, I think that you can analyze it individually as all three or collectively, and they all meet those definitions of intentional torts. But the point is, how does the initial push, fall, or however characterized, meet the definition of an intentional tort? Mr. Ironton's testimony does indicate that he intended to secure, because at that point Mr. Ironton had become, in his view, unruly and a danger to those around him. And so he wanted to secure and immobilize him. And as part of that, he moved him off balance in order to secure him. And that was an intentional action on Mr. Ironton's part. And then securing him on the ground was the confinement portion of that as well. So we would say that all of his actions were intentional. And he intended, he followed through on what he intended to do. Now the outcome and the harm that was done, that may not be intentional. And I don't think that the court needs to get to the outcome to whether or not to evaluate what his intent was in the actions he undertook. On the, I say also the plaintiff, or the appellant has made a point of trying to argue that you can slice this as negligence rather than as an intentional tort. And that seems to be important. But I would point the court back to Snow Irwin. And in that case it was a prisoner who had a miscalculated release date. And had argued that it was false imprisonment by having been kept in custody longer. And he had argued that it was a negligence thing. That he had been actually, they had been negligent in reviewing that release date. Ultimately this court found that that was not negligence and looked to the gravamen of the case and be able to establish that it really did arise out of the intentional tort. Our second point is that the district court did properly dismiss Mendenhall's negligence claim regarding the training and supervision of the security guards pursuant to the discretionary function exception. Under the discretionary function exemption to the FTC waiver of sovereign immunity, the United States has not waived immunity for any claim based on that exercise or performance or the failure to exercise or perform a discretionary function or duty. What was the discretion here? How was discretion exercised? So the Ninth Circuit evaluates that in the two-step process, right? They first evaluate what the, is there an element of judgment or choice? And that would, I would say in this case it was the training or supervision. And the second prong of that Ninth Circuit test again is whether the judgment is the kind that the discretionary function exemption was designed to shield. And that is very well established here that the decisions regarding employee training, supervision, and hiring are the sorts that are protected by the discretionary function. And that is the same in this case here that it's very much about how they went about training and supervising their security guards in order to- The argument offered by plaintiff is that the center's standards set a standard that are, was not satisfied that in fact the officer had not been, he emphasized the word shall, the officer had not been trained to the standard that was expressed in mandatory rather than the discretionary terms. Well, contrary to appellant's contention, ANTHC did provide specialized training and supervision according to its own policies. Specific, I'd point the court to Mr. Ironton's training transcripts that demonstrate more than 60 trainings, constituting over 42 hours of instruction, including non-violent crisis intervention that he completed on May 24th, 2016. The district court correctly considered the extrinsic evidence and rejected appellant's argument that ANTHC had somehow violated its own policies on training and supervision. On the third problem, I will go ahead and address the third problem as well during my time here, unless the court would like me to wait to address it following plaintiff's- Why don't you address it now because we're not going to give you a server bottle. Okay, that's good. So the district court did properly dismiss Mendenhall's constitutional tort claims because the FDCA does not waive sovereign immunity for such claims. As I've discussed, the FDCA is a limited waiver of sovereign immunity. It only waives United States immunity in the same extent that a private person would be found liable under state law. Because constitutional rights only apply to protect an individual from state action, the FDCA does not waive the United States sovereign immunity for constitutional tort claims. The federal or state substantive law does not allow for constitutional tort claims for three reasons. First, the Supreme Court has rejected any effort to allow a federal constitutional claim against the United States under the FDCA. Indeed, even if state law were to allow a private suit for constitutional tort, this would not expand the FDCA's waiver of sovereign immunity because, by definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right. Moreover, number two, the Alaska Supreme Court has never allowed an implied state constitutional cause of action against a state actor, much less a private person. And while Mr. Mendenhall suggests that a court could create a constitutional cause of action for him because he has no other remedy in this case, he cannot rely on the United States' invocation of sovereign immunity to argue for the creation of some new type of claim that could result in FDCA liability for the United States. Any such bootstrapping would be a contravention of the United States' limited waiver of sovereign immunity, and would violate the principle that the United States can only be held liable under the FDCA under circumstances where the United States, if a private person, would be held liable. Mr. Mendenhall also appears to argue that he should be allowed to pursue a constitutional tort claim against the security guards in their personal capacity. He is wrong, as the security guards at ANTC, while deemed federal employees for purposes of the FDCA, are not state actors. They are not investigative or law enforcement officers either, such that they are empowered by law to execute searches to seize evidence or make arrests for violations of federal law. Does the court have any further questions? Were they sued in their personal capacity? They were originally, yes, Your Honor, they were. The original suit was under their personal capacity, but they were deemed federal employees. And I would also point out that this argument is a bit misplaced, that this lawsuit is against the United States, while the district court dismissed Mr. Mendenhall's personal capacity claims against the security guards in the first Mendenhall case. He did not appeal that decision and cannot attempt to challenge that now in this case. Well, that's what I was asking. In this case, the United States is the defendant. The United States is the defendant, that's correct. For these reasons and those laid out in our briefing, the United States asks this court to affirm the district court's ruling. Thank you. Thank you, counsel. We'll hear a rebuttal. Thank you. Some of these arguments, which I looked at in the context of some of the information, remember this is a 12B6 case. It's not a Rule 56. What he's making an argument, at least on some of the discretionary function and some of the actions that took place, that's well heard under Rule 56. And the reason it's well heard under there is because you have discovery. You're able to go in and take multiple guards' testimony and things like that. But under 12B6... Any request to take jurisdictional discovery? I mean, this is a jurisdictional issue, so it was commonly raised early. That's part of it. We were kind of limited with other discovery, only of the security guard. We could only take his deposition to find out if he was a federal employee or not. So, yes. But if it was under Rule 56, 56F... Under 12B1. What? Under 12B1, you would be able to take discovery to determine as a threshold matter whether there's jurisdiction. Yes. Yes, that would be possible. But we did take the security guard. And we were kind of limited when we took the security guard as to jurisdictional issues. What other jurisdiction... You talk about discovery that would have been useful on a Rule 56 motion. What other discovery would have been useful for the jurisdictional question that's posed in front of us now? The other security guard. Did you make an attempt to take that? No, we did not do that. We did it in the first... In the first case, we were limited to the security guard that we sued. But you never asked to take an additional discovery, correct? Not in a second. Once again, we didn't even get an answer in the second... We never got an answer in the case. So, you know, you're kind of under 56. It's kind of... Do you have just enough to get by or not? Under 56... Not 56, but 12B6 or not. We felt we had enough. Substantially enough to get by. Under a number of... If you look at my cause of action under number 11, you'll see that not only did we say causing him to fall to the floor which... That it was a negligent in not contacting the police. There's a section in their guidelines that says they didn't call the police. They didn't call the police until later. And they violated their own policy. So we set out enough things under negligence to get by here. The last section that I'm concerned with on the constitutional section real quickly is that they essentially are promoting their security guards as if they're federal agents. Now once again, I realize he was very clear that he said I don't have a license, I'm not a federal employee. He was pretty clear on that. But what they gave him they empowered him to do things that a police officer would do a federal agent, someone who has that extra title. And that's the concern when they take the action they did in this case is to say you don't have constitutional rights under the 14th or 8th amendment. You put someone in a place you give them the power to injure somebody or to do these things but there's no constitutional basis to sue them for a violation of civil rights. So that's a concern we have. Thank you counsel. The case just argued will be submitted for decision and we will proceed.
judges: THOMAS, McKEOWN, CLIFTON